6TH JUDICIAL DISTRICT COURT
GRANT COUNTY NM
FILED IN MY OFFICE
7/10/2017 11:57:52 PM
MICHAEL M. MEDINA
DISTRICT COURT CLERK
Susan Kirker

SIXTH JUDICIAL DISTRICT
COUNTY OF GRANT
STATE OF NEW MEXICO

D-608-CV-2017-00205

CANDACE PENA

    Plaintiff,

 vs.

HIDALGO MEDICAL SERVICES, INC.,
JONATHAN LEGGETT, ASHLEY AARON

    Defendants.

## COMPLAINT FOR DAMAGES

The Plaintiff states:

## GENERAL ALLEGATIONS

1. She is a resident of the state of New Mexico.

2. Hidalgo Medical Services. Inc. (hereinafter referred to as "Hidalgo") is a New Mexico non-profit corporation. The other defendants are, or were at the time the events of this suit took place, residents of the state of New Mexico.

3. On or about August 2014, Plaintiff came to Hidalgo Medical Services for help with mental health issues. She is in her 40s. As an adolescent she was raped and tortured by her brother-in-law. She suffers from PTSD based on those experiences. Just prior to coming to Hidalgo she visited her relatives in Mississippi and had an encounter with the aforementioned brother-in-law, causing her PTSD to flare up.

4. She saw Defendant Leggett weekly for therapy at Hidalgo for six months. Her symptoms worsened rather than improved. She wanted to be hospitalized. Defendant Leggett said he would arrange for hospitalization but he never did. Instead, he passed Plaintiff to a different therapist, Defendant Aaron.

DEFENDANT'S
EXHIBIT
B

1

5. Patients of psychotherapy, particularly those who are having severe symptoms, become very attached emotionally to a therapist. Some of that is referred to as the phenomenon known as transference, in which the therapist becomes like a parental figure. Patients who are intensely suffering psychologically come to deeply rely on a therapist. They share all the most vulnerable and personal details of their lives, feelings and thoughts with the therapist. The therapist may be like a life preserver for patients who are terrified and feel like they are drowning in a sea of psychological pain, as Plaintiff felt.

6. For the reasons stated in the preceding paragraph, if a psychotherapist decides to stop treating a client, particularly a client suffering extreme distress as was Plaintiff, it is incumbent on them to do this in a very gentle, caring and non-abrupt manner in which they discuss the end of the therapeutic relationship with the client at length, and the client can work out feelings of abandonment and loss and fears about dealing with their illness without the therapist's help.

7. Defendant Leggett did not prepare Plaintiff in any way for the end of therapy. He simply had her new therapist, Defendant Aaron, come into the room and told Plaintiff she would be her new therapist, whereupon he left the room. She never was able to speak to Leggett again. After this meeting, Plaintiff attempted suicide and also wandered around Silver City in a dissociated state.

8. Defendant Aaron did many things that were improper and didn't do many things she should have.

9. Defendant Aaron many times would not do therapy with Plaintiff even though Plaintiff came to the session and they were sitting in the room together. When Plaintiff cried, Aaron told Plaintiff, "If you don't stop crying you should leave, I have other people to help." Sometimes Plaintiff would ask her something and Aaron would not answer and just sit and stare.

Aaron told Plaintiff she was a "pain in the ass" and that she didn't know if she wanted to be her therapist.

10.  In a meeting between Neal Bowen, who was the head of Defendant Hidalgo's mental health clinic, Defendant Aaron, and Plaintiff, Plaintiff asked if she could change therapists and Bowen told her that if she didn't like Defendant Aaron she should leave the clinic.

11.  Aaron told Defendant she had a borderline personality disorder and that unless she admitted that she did, she could not be part of group therapy which Defendant Leggett, before he abandoned Plaintiff, told her she needed and would help her. Then Aaron told Plaintiff she would not do trauma therapy with her unless she was part of the group. Plaintiff asked to be reevaluated and was refused. She obtained a psychological evaluation from an independent psychologist, Dr. Lisa Houston, who determined Plaintiff did not have a borderline personality disorder. When Plaintiff reported to Aaron that Dr. Houston's evaluation said she did not have a borderline personality disorder, Aaron was uninterested.

12.  Plaintiff's general physician had prescribed an anti-anxiety drug known as Ativan to Plaintiff.  Plaintiff was taking Ativan during her therapy with Defendants. Defendants were aware she was taking Ativan and of the dosage she was taking. It turns out she was taking a dosage that was unhealthy and was exacerbating, if not actually causing, many of her severe disturbed mental symptoms. When she cut down on the dosage of Ativan her mental condition improved significantly.

13.  Leggett, who has a Ph.D., handed Plaintiff over to Defendant Aaron who was a young Licensed Professional Clinical Mental Health Counselor (LPCC) with, on information and belief, not much experience. This was in spite of the fact that Plaintiff was very disturbed and suicidal.

14.  The actions and omissions described above caused Plaintiff great emotional pain. Given the fragility of her mental condition, these actions and omissions not only did not help the condition, but were destructive and harmful to that condition. They prolonged her treatment unnecessarily.

## COUNT ONE – NEGLIGENCE/MALPRACTICE

15.  The foregoing facts establish that all Defendants had a duty of care to Plaintiff, and provided services that were beneath the standard of care to be expected of reasonable professionals or clinics providing the sort of services they were providing. Their breaches of duty proximately caused injury to Plaintiff.

16.  The individual defendants were acting within the scope of their duties when committing the acts and omissions complained of, and Hidalgo is liable for those acts and omissions.

## COUNT TWO – BREACH OF IMPLIED CONTRACT

17.  There was an implied contract between Plaintiff and the Defendants whereby the Defendants were obligated to treat the Plaintiff with skill and care. By the acts and omissions cited above the Defendants breached that contract.

## PUNTIVE DAMAGES

18.  The negligence in this case was so gross and wanton as to exhibit malice or a conscious or reckless disregard of the rights of Plaintiff.

WHEREFORE, Plaintiff asks that the Court:

1.  Enter judgment on both counts in her favor.

2.  Award compensatory, consequential, special and punitive damages.

3.  Award costs and any other appropriate relief.

**_S/Jonathan Diener_**
Attorney for Plaintiff
PO Box 27
Mule, Creek, NM 88051
575-388-1754
jonmdiener@gmail.com